**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Altela Incorporated,<br><br>   Plaintiff,<br><br>v.<br><br>Arizona Science and Technology Enterprises LLC, et al.,<br><br>   Defendants. | No. CV-16-01762-PHX-DGC<br><br>**ORDER** |

Defendant Arizona Science and Technology Enterprises ("AzTE") moves to compel compliance with the alternative dispute resolution ("ADR") provisions set forth in its License Agreement with Plaintiff Altela, Inc. Doc. 22. Defendant Arizona State University Foundation for a New American University ("Foundation"), which is not a party to the License Agreement, files a separate motion to compel ADR with respect to the claims against it. Doc. 23. The motions have been fully briefed (Docs. 26, 27, 28, 30), and the Court concludes that oral argument will not aid in its decision.[1] The Court will grant the motions in part and deny them in part.

**I. Background.**

  **A. This Dispute.**

The allegations in the complaint are taken as true, unless contradicted by an evidentiary submission. In the 1990s, Professor James Beckman of Arizona State

---

[1] Plaintiff's request for oral argument is therefore denied. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

University ("ASU") developed a water purification process that uses air to evaporate dirty water, forming pure condensate. Doc. 1, ¶ 8. Professor Beckman invented a device known as a "dewvaporation tower" to facilitate this process. ¶ 9. The Arizona Board of Regents obtained a patent for this technology, and together with the Foundation, it later founded AzTE to manage all of ASU's intellectual property. ¶¶ 10, 14. Thus, AzTE is the entity currently charged with managing the dewvaporation patent.

Following a complicated series of transactions that are not relevant here, Altela was assigned the right to develop, use, and sell the dewvaporation technology in 2006, pursuant to a License Agreement ("Agreement") with AzTE. ¶¶ 12, 15-20. In exchange, Altela promised to pay royalties to AzTE on the sale of any "Licensed Product" – "any product or part thereof which incorporates or has been developed or made using" the dewvaporation technology, and "any services offered in connection with or related to the use of" such a product. ¶ 24.

This provision proved insufficiently precise to avert controversy. Beginning in 2007, the parties began to have disputes over the meaning of "Licensed Product." ¶ 27. This, in turn, led to disputes over how much Altela owed AzTE in royalties. Between 2007 and 2015, the parties exchanged proposals and counterproposals for revising the definition. ¶ 28. In November 2010, AzTE threatened to terminate the Agreement based on its allegation that Altela had not paid royalties. ¶ 30. Altela made a payment under protest to avoid termination. *Id.*

In July 2013, AzTE performed an audit of Altela. ¶ 31. Based on the results of this audit, AzTE claimed that Altela had improperly withheld royalties. ¶ 32. AzTE demanded that Altela pay the amount in dispute and the cost of the audit. *Id.* Altela disputed AzTE's interpretation of the audit results, and refused to pay either sum. *Id.*

On March 26, 2014, AzTE sent a letter to Altela, alleging that Altela had materially breached the Agreement by failing to pay certain royalties due in 2011, failing to pay for the audit, and failing to provide certain annual reports. Doc. 26-1 at 2. AzTE indicated that it intended to terminate the Agreement and pursue all available legal

remedies if Altela did not cure these breaches within the time period specified by the Agreement. *Id.* Altela responded by invoking the Agreement's ADR Addendum. *Id.* at 5. AzTE agreed to submit the dispute to ADR, and attended a negotiation session, as required by the ADR Addendum. Doc. 1, ¶ 37.

During late 2014 and early 2015, the parties continued to negotiate, ultimately producing a draft second amendment to the Agreement. ¶ 38; *see* Doc. 26-1 at 10-11. On May 19, 2015, AzTE informed Altela that it needed to provide certain information, and pay "the amount that it concedes is owed" pursuant to the audit report, before the second amendment could be finalized. Doc. 26-1 at 13. The letter stated that AzTE would "continue to separately address through our discussions or, if necessary, a dispute resolution procedure, the additional payments and interests that AzTE is owed for 2011 and subsequent years." *Id.*

On June 29, 2015, AzTE informed Altela that it was in material breach of the Agreement, based on its failure to pay certain royalties due in 2011, its failure to pay for the audit, and its failure to provide certain requested information. Doc. 26-1 at 16. AzTE indicated that it would terminate the agreement within 30 days if Altela failed to cure these breaches. *Id.* at 17. In addition, AzTE requested an in-person meeting "to begin the process for initiating an arbitration for recovery of all amounts due to AzTE." *Id.* Altela responded by denying any material breach, but indicating its willingness to proceed via ADR. Doc. 1-3 at 2. It requested that the parties proceed directly to mediation. *Id.* AzTE presents no evidence that it responded to this request. On July 30, AzTE terminated the Agreement. Doc. 26-1 at 27.

On October 12, 2015, Altela proposed that the parties resume the ADR process and skip directly to arbitration. Doc. 29-1 at 2. It requested that AzTE reinstate the Agreement pending the outcome of arbitration. *Id.* On October 16, AzTE responded that it was open to expedited arbitration, and proposed a schedule for the proceedings. Doc. 26-1 at 21. It indicated that while it was not willing to reinstate the Agreement pending arbitration, it would agree not to grant the rights to the dewvaporation

technology to any third party until after the arbitration.  *Id.*  On October 29, AzTE reiterated its position, and requested that the parties move forward with the selection of an arbitrator.  Doc. 29-2 at 2.  Altela produces no evidence that it ever responded to this request; AzTE produces emails and letters that suggest no response was received.  *See* Docs. 29-4 at 3 (counsel for AzTE, informing Altela that she never received response to her October 29 letter, her November 13 email, or her November 19 voicemail); 29-5 at 2 (same); *see also* 29-3 at 2 (internal AzTE email, dated November 13, 2015, noting that AzTE has not received any response).

Although AzTE received no response to its October 16, 2015 letter, it made two additional offers to proceed with arbitration.  On November 30, AzTE stated: "If after our recent correspondence Altela believes that there remain open questions about the Agreement or its termination . . . it is imperative that Altela immediately proceed to the next step of the Dispute Resolution Procedure to avoid prejudice to AzTE from delay in addressing them.  AzTE stands ready to arbitrate now."  Doc. 29-4 at 3.  Altela responded by stating only that it was "evaluating its legal and financial options."  Doc. 26-1 at 24-25.  On December 15, 2015, AzTE stated: "If Altela wishes to arbitrate any issues under the Agreement, please let us know by December 31, 2015 and we will immediately move forward with the process."  Doc. 29-5 at 4.  Altela submits no evidence that it responded to this letter.  It filed this action on June 6, 2016, asserting four claims against AzTE for breach of contract, as well as claims for tortious interference with business relations and unjust enrichment.  Doc. 1.  It also asserted a claim against the Foundation for aiding and abetting.  ¶¶ 104-08.

**B.    Relevant Contractual Provisions.**

**1.    The ADR Procedure.**

Section 28.11 of the Agreement provides that "any disputes under or relating to this Agreement . . . shall be . . . resolved pursuant to the dispute resolution procedure set forth in [the ADR Addendum]."  Doc. 22-1 at 26.  The ADR Addendum provides a procedure for the parties to resolve "any dispute between them arising out of or relating

- 4 -

to this Agreement." *Id.* at 28. First, representatives of each party are required to meet "to attempt in good faith to negotiate a resolution of the dispute." *Id.* If the parties are unable to negotiate a written resolution to the dispute within 30 days, either party may request the appointment of a neutral mediator. *Id.* "The parties agree to participate in good faith in the Mediation to its conclusion." *Id.* If the parties have not resolved the dispute within 120 days, either party may move to terminate the mediation. *Id.* at 28-29. Following such a motion, the mediator shall recommend a resolution; each party is required to consider this recommendation in good faith. *Id.* at 29.

If either party rejects the mediator's recommendation, the dispute will be submitted to binding arbitration. *Id.* The arbitration tribunal will consist of three arbitrators, one chosen by each party, and the third jointly appointed by the party-selected arbitrators. *Id.* "The award of the arbitration tribunal shall be final and judgment upon such an award may be entered in any competent court." *Id.*

### 2. The Termination Procedure.

Section 16.1 provides that failure of either party to comply with a material obligation imposed by the Agreement shall entitle the other party to give written notice requiring the defaulting party to cure the default. Doc. 22-1 at 20. If the default concerns a payment obligation, the defaulting party has 30 days to cure the breach; if the default concerns something else, the defaulting party has 90 days to cure. *Id.* If the defaulting party fails to cure within the specified time, the other party is entitled to terminate the Agreement. *Id.* Such termination shall be "without prejudice to any . . . other rights conferred . . . by this Agreement." *Id.*

Section 17.1 states specifically that termination of the agreement "for any reason" shall be without prejudice to "the rights and obligations provided for in . . . Article 28." *Id.* at 21. Article 28 provides, *inter alia*, that the parties shall resolve "any disputes under or relating to th[e] Agreement" pursuant to the ADR Addendum. *Id.* at 26.

## II. AzTE's Motion.

AzTE contends that Altela's complaint should be stayed or dismissed because the

1   ADR Addendum provides that all Agreement-related disputes between the parties that
2   relate to the Agreement shall be submitted to ADR, and Altela's claims relate to the
3   Agreement. Altela does not dispute that its claims are Agreement-related. Instead, it
4   argues that AzTE is precluded from enforcing the ADR Addendum because AzTE
5   (1) materially breached the Agreement; (2) waived its right to insist on ADR; and (3) has
6   unclean hands. Altela also argues that (4) ADR would be an exercise in futility.

7   At the outset, the Court notes that the parties are, to some extent, talking at cross
8   purposes. AzTE focuses almost entirely on the enforceability of the arbitration provision
9   of the ADR Addendum, even as it seeks to enforce the entire ADR Addendum, which
10  requires the parties to engage in good faith negotiation and mediation before proceeding
11  to arbitration. Altela, on the other hand, advances a number of arguments apparently
12  directed at showing that the negotiation and mediation provisions are unenforceable. The
13  Court will first consider the enforceability of the arbitration provision, before considering
14  the enforceability of the negotiation and mediation provisions.

15  **A.     Arbitration.**

16  **1.     Legal Standard.**

17  Section 2 of the Federal Arbitration Act ("FAA") provides that an agreement to
18  arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at
19  law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 provides that
20  a federal court must, upon application of one of the parties, stay an action "brought upon
21  any issue referable to arbitration," unless "the applicant for the stay is . . . in default in
22  proceeding with such arbitration." *Id.*, § 3. Section 4 provides that "[a] party aggrieved
23  by the alleged failure, neglect, or refusal of another to arbitrate" may petition a district
24  court to compel arbitration, and "upon being satisfied that the making of the agreement to
25  arbitrate or the failure to comply therewith is not in issue," the court must enforce the
26  agreement. *Id.*, § 4. Although § 4 "does not expressly relate to situations . . . in which a
27  stay is sought" under § 3, the Supreme Court has concluded that the same standard should
28  apply regardless of "which party to the arbitration agreement first invokes the assistance

of the federal court." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).

Thus, when confronted with a dispute about whether an arbitration provision should be enforced, a federal court is limited to considering whether there is an enforceable agreement to arbitrate, whether the arbitration agreement applies to the dispute in question, and whether the party seeking the stay has defaulted on its right to compel arbitration. *See id.* at 406 ("a federal court may consider only issues relating to the making and performance of the agreement to arbitrate" on a motion to compel arbitration); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (courts may resolve threshold questions such as "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy"); *Martin v. Yasuda*, --- F.3d ---, 2016 WL 3924381, at *5 (9th Cir. July 21, 2016) (courts may consider whether a party waived its right to arbitrate by engaging in inconsistent conduct). Merits issues are not to be considered by the court. *See Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 521 (D.C. Cir. 2009) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.") (citation and quotation marks omitted). Finally, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

**2. Material Breach.**

Altela argues that AzTE materially breached the Agreement by falsely claiming that Altela had failed to pay certain royalties, refusing to mediate the royalty dispute, and wrongfully terminating the agreement. Doc. 26 at 8-9. Altela argues that it is excused from complying with the arbitration provision as a result of these breaches. This argument fails as a matter of federal law. As explained, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate" on a motion to compel arbitration. *Prima Paint*, 388 U.S. at 406. Implicit in this formulation

is the understanding that a party's post-ratification breach of contract cannot negate a valid agreement to arbitrate, unless the breach pertains to the arbitration provision itself. *See Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l, AFL-CIO*, 370 U.S. 254, 262 (1962) ("Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract, in many contexts, even total breach[.]"); *cf. Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) (where party breached the arbitration agreement by refusing to arbitrate, it was barred from enforcing the agreement). Here, there is no allegation that AzTE breached the arbitration provision itself.[2] Even if AzTE materially breached other parts of the Agreement, Altela would not be excused from complying with the arbitration provision.

Since both parties cite Arizona law, the Court notes that the result would be the same even if federal law were not controlling. In general, "the victim of a material or total breach is excused from further performance" under the contract. *Zancanaro v. Cross*, 339 P.2d 746, 750 (Ariz. 1959). But this rule does not apply where performance under an arbitration provision is concerned. As explained in *EFC Dev. Corp. v. F. F. Baugh Plumbing & Heating, Inc.*, 540 P.2d 185 (Ariz. Ct. App. 1975):

> By its very nature the arbitration clause in the contract is distinct from other clauses. It is not to be considered as a clause in favor of one party or the other, the performance of which might be excused by the breach of other provisions of the contract. Rather, the arbitration clause constitutes the consent of the parties to the establishment of extra-legal machinery for the settlement of their disputes.

*Id.* at 187. Following this reasoning, the Arizona Court of Appeals rejected the exact argument made by Altela here: that a party's allegedly wrongful termination of a licensing agreement precluded it from invoking the agreement's arbitration provision. *See Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 680 P.2d 1235, 1241 (Ariz. Ct. App.

---

[2] To the extent Altela argues that AzTE breached the arbitration provision or waived the right to rely on it by terminating the Agreement rather than initiating arbitration, that argument is foreclosed by the Agreement. *See* Doc. 22-1 at 20 (a party may terminate the Agreement "without prejudice to any . . . other rights conferred . . . by this Agreement"); *id.* at 21 (termination of the Agreement "for any reason" shall be without prejudice to "the rights and obligations provided for in . . . Article 28," which incorporates the ADR Addendum).

- 8 -

1984) ("Northwestern's letter is an attempt to terminate the license agreement for cause. This position may or may not be supported by the evidence. If not, Northwestern's action would be considered a breach of the agreement. However . . . such a breach does not constitute an abandonment or repudiation of the arbitration clause"). Thus, the result is the same under either federal or Arizona law: a party does not, by breaching a contract, forfeit the right to enforce an arbitration provision included in that contract.

### 3. Waiver.

The FAA specifically recognizes that a party can waive its right to insist on arbitration if it fails to properly invoke that right. Section 3 provides that an action shall be stayed only if "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Section 4 provides that an arbitration provision need not be enforced if there is a dispute regarding a party's compliance with that provision. *Id.* § 4. Consistent with this language, the Ninth Circuit has stated that a federal court presented with a motion to compel arbitration may consider whether the moving party waived its right to arbitrate. *Martin*, 2016 WL 3924381, at *5; *see also Prima Paint*, 388 U.S. at 406 (courts may consider issues related to the "performance of the agreement to arbitrate" on a motion to compel arbitration). A party may waive the right to insist on arbitration, for example, by refusing a request to arbitrate the relevant claim, or by actively litigating the claim. *See Martin*, 2016 WL 3924381, at *5-7.[3]

The Ninth Circuit recently explained the standard for determining whether waiver-by-conduct has occurred:

> The right to arbitration, like other contractual rights, can be waived. A determination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements. Because waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a

---

[3] Courts distinguish between waiver-through-conduct, which may be considered by a court, and contractual waiver, which is presumptively for the arbitrator. *See JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 391-94 (6th Cir. 2008). Contractual waiver concerns whether the party seeking to arbitrate waived its right to insist on arbitration by failing to satisfy contractual prerequisites to arbitration. *Id.* at 392-93. Waiver-through-conduct concerns whether the party seeking to enforce arbitration acted in a manner "completely inconsistent" with the right to arbitrate. *Id.* at 393.

> heavy burden of proof. As such, a party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.

*Id.* at *5 (internal citations and quotation marks omitted).

Altela argues that AzTE waived its right to enforce the arbitration provision by "engaging in acts inconsistent with utilization of arbitration." Doc. 26 at 11. But it fails to bear its heavy burden to show waiver. Altela does not identify any specific acts by AzTE that it believes were inconsistent with the right to arbitrate. In the portion of its brief purporting to show inconsistent conduct, Altela offers only the following:

> Defendant's actions and statements have repeatedly established its intention not to arbitrate, Defendant has proceeded in contradiction of the Dispute Resolution Agreement, and it has unreasonably delayed seeking arbitration. Defendant has even attempted to use its refusal to arbitrate as leverage to coerce Altela into capitulating to Defendant's position on royalties due under the License Agreement.

*Id.* No citations to the record or the complaint appear in this section of the brief. Altela's failures to describe the alleged inconsistent acts with specificity, or to present factual support for its waiver argument, are reason enough to reject its argument. *See Martin*, 2016 WL 3924381, at *5 (party asserting waiver of arbitration provision bears "heavy burden").

Moreover, the idea that AzTE has intentionally relinquished a known right to compel arbitration is contradicted by the record. AzTE never disavowed an intention to arbitrate. Just the opposite is true. *See* Docs. 26-1 at 21 ("AzTE is open to participating in an expedited arbitration"); 29-2 at 2 (suggesting that the parties move forward with the selection of an arbitrator); 29-4 at 3 ("AzTE stands ready to arbitrate now."); 29-5 at 4 ("If Altela wishes to arbitrate . . . we will immediately move forward with the process."). It never acted in a manner completely inconsistent with the right to arbitrate by, for example, refusing a proper request to arbitrate, *cf. Dillard's*, 430 F.3d at 1012, or consenting to litigate a dispute with Altela, *cf. Martin*, 2016 WL 3924381, at *6.[4] Nor

---

[4] As explained below, AzTE did fail, on one occasion, to respond to a request by

- 10 -

did it unreasonably delay in seeking to compel arbitration; its motion to compel was filed just over a month after Altela initiated this action.

### 4.     Unclean Hands.

Altela argues that AzTE is precluded from enforcing the ADR Addendum because it has unclean hands as a result of its wrongful termination of the Agreement.  The Court does not agree.  As explained, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate" on a motion to compel arbitration.  *Prima Paint*, 388 U.S. at 406.  Thus, courts will not deny a motion to compel arbitration on unclean hands grounds unless "the misconduct allegedly giving rise to the unclean hands . . . relate[s] directly to the making of th[e] agreement" to arbitrate.  *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 481 (S.D.N.Y. 2013) (citation and quotation marks omitted).  Altela does not allege that AzTE acted inequitably during the formation of the Agreement.  Therefore, the unclean hands doctrine does not apply.  *See Lange v. KPMG LLP*, No. 4:12-CV-3148, 2014 WL 1584483, at *4 (D. Neb. Apr. 21, 2014) ("Virtually all of the alleged malfeasance on the part of [defendant] of which the plaintiff complains occurred in the course of its performance under the terms of the agreement and upon [defendant's] withdrawal; not with respect to the formation of the agreement. . . .  In such instances, the court cannot apply the doctrine of unclean hands to circumvent the parties' contractual agreement to arbitrate").

### 5.     Futility.

Altela argues that it would be futile to enforce the ADR Addendum because AzTE cannot be expected to engage in the process in good faith.  This argument also lacks merit.  Futility is not one of the grounds upon which a court can refuse to enforce an agreement to arbitrate under the FAA.  *See Prima Paint*, 388 U.S. at 406 ("a federal court

---

Altela to *mediate*.  But Altela cites no case holding that failure to mediate can constitute waiver of the right to arbitrate.  Nor would such a holding make sense under the governing framework for determining whether a party has waived the right to arbitrate.  At the time Altela requested mediation, AzTE had no "existing right to compel arbitration," *Martin*, 2016 WL 3924381, at *5, so it could not have taken action inconsistent with such a right.

- 11 -

may consider only issues relating to the making and performance of the agreement to arbitrate" on a motion to compel arbitration). In any case, enforcing the arbitration provision will not be futile. The Agreement provides that, once a dispute has been subject to arbitration:

> [t]he award of the arbitration tribunal shall be final and judgment upon such an award may be entered in any competent court or application may be made to any competent court for judicial acceptance of such an award and an order of enforcement.

Doc. 22-1, ¶ 1(f). Thus, whether or not AzTE acts in good faith, Altela can obtain a final, judicially enforceable judgment. There is nothing futile about this result.

### B. Mediation.

There is no Federal Mediation Act,[5] and "mediation is not within the FAA's scope." *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1240 (11th Cir. 2008). Hence, courts apply ordinary principles of state law in determining whether an agreement to mediate is enforceable. One such principle is waiver. "Waiver is either the express, voluntary, intentional relinquishment of a known right[,] or such conduct as warrants an inference of such an intentional relinquishment." *Am. Cont'l Life Ins. Co. v. Ranier Const. Co.*, 607 P.2d 372, 374 (Ariz. 1980). "Waiver by conduct must be established by evidence of acts inconsistent with an intent to assert the right." *Id.*

The Court concludes that AzTE waived its right to compel mediation by engaging in conduct inconsistent with reliance on that right. On July 21, 2015, Altela sent AzTE a letter requesting that the parties commence mediation. Doc. 1-3 at 2-3. AzTE presents no evidence indicating that it responded to this request.[6] Altela later requested that the parties skip the mediation stage and proceed directly to arbitration. Doc. 29-1 at 2.

---

[5] As a matter of historical interest only, an act known as the "Federal Mediation Act of 1946" was proposed and passed by Congress, but vetoed by President Truman. *See* https://library.cqpress.com/cqalmanac/document.php?id=cqal46-1410247.

[6] AzTE argues that it did respond, and points to an email it sent to Altela's counsel on July 22, 2015. Doc. 29 at 2. But the email simply alerts counsel that its representation of Altela would give rise to a conflict of interest, given the firm's representation of AzTE in other matters. *Id.* That is not a response to Altela's request for mediation.

- 12 -

AzTE indicated that it was amenable to skipping mediation, Doc. 26-1 at 21 ("AzTE is open to participating in an expedited arbitration"), and suggested that the parties move forward with the selection of an arbitrator. Doc. 29-2 at 2; *see also* Docs. 29-4 at 3 ("AzTE stands ready to arbitrate now."); 29-5 at 4 ("If Altela wishes to arbitrate . . . we will immediately move forward with the process."). AzTE's failure to accept Altela's July 21, 2015 offer to mediate, and its subsequent statements that it was willing to skip the mediation stage and proceed directly to arbitration, suggest that AzTE intentionally relinquished the right to mediate. The Court concludes that AzTE has waived that right.

## III.    The Foundation's Motion.

The Foundation separately moves to compel ADR with respect to the claims against it. Although the Foundation is not a signatory to the Agreement, Altela alleges that the Foundation acts as the "alter ego" of AzTE. Doc. 1, ¶ 5. It is well settled that the alter ego of a signatory is bound by, and can enforce, the terms of an arbitration agreement to the same extent that the signatory can. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) ("General contract and agency principles" – including those of veil-piercing/alter ego – "apply in determining the enforcement of an arbitration agreement by or against nonsignatories."). Because Altela alleges that the Foundation is the alter ego of a signatory, the Foundation is entitled to enforce the Agreement's ADR provisions to the same extent that AzTE can.

## IV.    Remedy.

The FAA provides that, upon determining that an issue in a pending action is subject to a mandatory arbitration provision, a federal court "shall . . . stay the action until such arbitration has been had." 9 U.S.C. § 3. "Notwithstanding this statutory language . . . the majority of courts . . . have held that a stay serves no obvious purpose and dismissal is appropriate where the entire controversy between the parties is subject to and will be resolved by arbitration." *Jann v. Interplastic Corp.*, 631 F. Supp. 2d 1161, 1167 (D. Minn. 2009) (citation and quotation marks omitted); *see also Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming dismissal of case where all

claims were subject to arbitration).

Here, the Agreement's arbitration provision provides that all Agreement-related disputes between the parties shall be submitted to arbitration. The Court finds this provision enforceable, and Altela does not deny that its claims relate to the Agreement. Thus, all of Altela's claims are subject to mandatory arbitration. The Court will dismiss this case rather than staying it.

**IT IS ORDERED:**

1. AzTE's motion to dismiss and compel ADR (Doc. 22) is **granted**, insofar as it seeks to compel arbitration pursuant to subsection 1(f) of the ADR Addendum. The motion is **denied** insofar as it seeks to compel negotiation or mediation pursuant to subsections 1(a)-(d).

2. The Foundation's motion to dismiss and compel arbitration (Doc. 23) is **granted**, insofar as it seeks to compel arbitration pursuant to subsection 1(f) of the ADR Addendum. The motion is **denied** insofar as it seeks to compel negotiation or mediation pursuant to subsections 1(a)-(d).

3. The Rule 16 Case Management Conference set for August 31, 2016 at 4:00 pm. is **vacated.**

4. The Clerk of the Court shall enter judgment accordingly and **terminate** this case.

Dated this 31st day of August, 2016.

David G. Campbell
United States District Judge

- 14 -